IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Mark Campbell, | ) | Civil Action No. 6:04-2036-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| Gala Industries, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on the defendant Gala Industries Inc.'s ("Gala") motion for summary judgment.  The court allowed the parties to argue their respective positions at a hearing on February 1, 2006.  The motion has been fully briefed and is ripe for consideration.  For the reasons set forth below, the defendant's motion is granted in part and denied in part.

## I.  Background Facts and Procedural History

The undisputed facts, in the light most favorable to the plaintiff, are as follows: Gala is a manufacturer of underwater pelletizers and tempered water systems that create plastic pellets for use in manufacturing various plastic items.  A pelletizer line processes raw plastic (molten polymer) into the plastic pellets.  Generally, molten polymer passes through an extruder, a die with holes in a circular pattern, a water-filled cutting chamber that cuts the polymer into pellets, and finally a centrifugal dryer which dries the pellets and discharges them into bins.

Gala manufactured and sold the pelletizer line involved in this case originally to Day & Zimmerman in early 1990.  Approximately nine years later, in 1999, the centrifugal dryer (along with the rest of the pelletizing line) was purchased by NTM, Inc., a polymer processing facility in Mauldin, South Carolina. On December 13, 1999, Gala representatives were on-sight at NTM, Inc. to inspect this

dryer prior to its going into service at NTM, Inc.

Plaintiff was employed at NTM, Inc. beginning in August 2000. He worked as a line operator for the entire pelletizing line for a few months after which he was assigned the job of being a maintenance technician. On May 29, 2001, the new line operator, Mr. Jeff Thoreson, was experiencing trouble with the pelletizing line and sought the plaintiff's assistance. Apparently, the line had "wrapped up" or a clog of polymer had accumulated somewhere along the line causing it to shut down. In attempting to determine the source of the problem, the plaintiff decided to remove the panel door to the centrifugal dryer. Plaintiff and Thoreson both believed that the dryer had automatically cut off. Plaintiff opened the panel door to the dryer, removed a screen, and cleared the clog. After the plaintiff cleared the clog, the machine suddenly started back and severed all four (4) of the plaintiff's fingers and thumb on his left hand.

The following warnings were on the panel door of the dryer:

DANGER - DISCONNECT AND LOCK POWER SOURCE AND ASSURE THAT ROTOR HAS COME TO A COMPLETE STOP BEFORE MOVING BELT GUARDS, COVERS, FILTERS OR MAKING REPAIRS.

The dryer door also had a pictograph on it which shows a hand coming into contact with a fan.

On May 21, 2004, the plaintiff filed this suit against Gala in the Court of Common Pleas for Greenville County, South Carolina. On June 24, 2004, the defendant removed the case to this court on the basis of federal diversity jurisdiction as set forth in 28 U.S.C. § 1332. In the complaint, the plaintiff alleges negligence, breach of warranty, and strict liability causes of action. Essentially, the plaintiff is alleging the dryer should have been designed with an automatic shut-off or limit switch (also known as interlocking device), or other locking device so that the dryer would stop running whenever the panel door was removed.

2

## II.  **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence.  The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

## III.  **Discussion**

The defendant argues that the plaintiff's complaint alleges the three causes of action that typically form a products liability action: negligence, breach of warranty, and strict liability.  In order to prevail on any

of these causes of action, the plaintiff has to prove the product in question is defective in some manner, either through a design failure in the manufacture of the product or a failure to warn of an unforeseeable danger. See e.g. Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321 (S.C. Ct. App. 1995). The defendant seeks summary judgment on the grounds that the dryer was not defective, at any time, and thus, the plaintiff's products liability action fails. Specifically, in support of its argument that the dryer was not defective, the defendant alleges three (3) grounds in its motion for summary judgment, and the court will address each in turn.

### A.  Warnings

The defendant first argues that the dryer was not defective because it contained multiple warnings that made it safe for use. "Where a warning is given, the manufacturer may reasonably assume that it will be read and heeded . . ." Restatement (Second) of Torts, cmt. j (1965). This section of the Restatement has been interpreted to mean that when an adequate warning is given, the manufacturer may assume that it will be heeded by the product user. Thomas v. Hoffman-La Roche, 949 F.2d 806 (5th Cir. 1992) (cited with approval in Odom v. G.D. Searle & Co., 979 F.2d 1001 (4th Cir. 1992)); see also Anderson v. Green Bull, Inc., 471 S.E. 2d 708 (S.C. Ct. App. 1996). A product is not defective or unreasonably dangerous if it bears a warning that, if followed, will make the product safe for use. Anderson, *supra*. And if the user ignores the warning, the seller is not liable for any injuries caused by the use of this product. Id.

In the case at bar, the defendant argues that warnings on the dryer in question were adequate and therefore, the dryer was not defective. However, based on the briefs and information submitted, as well as the arguments of counsel, this court finds that there are genuine issues of material fact as to whether the warnings on the dryer at issue were adequate. Specifically, the court notes that in opposition to this motion for summary judgment, the plaintiff filed an affidavit of his human factors expert, Dr. Clement, in which Dr. Clement opines that the warnings on the dryer at issue were inadequate. In reply, the defendant argues that

4

Dr. Clement's affidavit was submitted long after the deadline for submitting expert opinions, and therefore, is untimely. Moreover, the defendant argues that Dr. Clement's *original* report focuses entirely on the negligent design aspect of the plaintiff's case, and had *no* opinion regarding the warnings. Therefore, the defendant argues that this court should not consider Dr. Clement's affidavit regarding the inadequacies of the warnings for purposes of this motion for summary judgment. The court finds that it does not have to reach the issue of the admissibility of Dr. Clement's affidavit, as Dr. Clement's original report creates genuine issues of material fact as to the adequacy of the warnings on the dryer. Notably, in paragraph three (3) of Dr. Clement's original report, he notes:

> There was a pictogram of the consequences of encountering the rotor on the door to the dewatering section. This pictogram and other warning materials *would have been helpful* if other safety measures were in place. Had interlocks been in place to turn off and disable operations while the doors and screen were open, this accident would not have happened. An *effective* warning then would provide a reminder of why opening the door disabled the power.

Entry # 34-23, p. 8.

The court finds that in the light most favorable to the nonmoving party, the plaintiff, this section of Dr. Clement's original report indicates or suggests that the warnings were not helpful or were inadequate. The court also notes that in paragraph five (5) of the original report, Dr. Clement goes on to say "[w]arnings on equipment and in instructions are useful and improve safety, but are not adequate substitutes for guarding." Entry # 34-23, p. 8-9. After considering Dr. Clement's original report, the testimony of the defendant's President and Chairman of the Board, and the testimony of the plaintiff and his co-worker, Mr. Jeff Thoreson, the court finds there are genuine issues of material fact regarding the adequacy of the warnings on the dryer in question.

The court notes that under South Carolina law "[o]nce it is established that a product must display

5

a warning to be safe, the question of the adequacy of the warning is one of fact for the jury as long as evidence has been presented that the warning was inadequate." Allen v. Long Mfg. NC, Inc., 505 S.E.2d 354 (S.C. Ct. App. 1998).

At this stage, it is not the court's function to weigh the evidence, but rather to determine whether there is a genuine issue of fact which justifies a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). For the foregoing reasons, the court denies the defendant's motion for summary judgment in this regard.

### B. Optional Equipment

As an alternative ground for summary judgment, the defendant argues that the dryer in question was not defective or unreasonably dangerous because a shut-off or limit switch was available as an *option* at the time of the dryer's manufacture or original sale.[1]

At the outset, this court notes that the South Carolina Supreme Court has held that the fact that a product could have been *more* safe is not sufficient to support a finding that it is unreasonably dangerous. Marchant v. Mitchell Dist. Co., 240 S.E.2d 511, 514 (S.C. 1977). However, the Court has also recognized that "failure to incorporate into a product a safety feature or device may constitute a defective condition of the product." Marchant v. Lorain Division of Koehring, 251 S.E.2d 189, 191 (S.C. 1979). The Court found that once competent evidence is adduced indicating the machine is unreasonably dangerous absent the safety device, a question is created for the jury. Id.

After considering the testimony and evidence in the light most favorable to the nonmoving party, as this court is charged to do at this stage, the court finds that the case at bar presents a question of fact as to

---

[1] As noted above, the dryer was originally purchased by Day & Zimmerman in early 1990 and was sold to the plaintiff's employer, NTM, Inc., nine years later.

6

whether the dryer in question was defective or unreasonably dangerous absent the limit switch on the panel door.  Arguably, the defendant knew or should have known that operators regularly had to access the dryer panel door to clear clogged screens.  Likewise, the defendant arguably knew that the gravity of the injury for someone whose hands were in the dryer was great and severe, as evidenced by the prior lawsuits and amputations sustained by several other workers.  There is also evidence in the record that at the time of manufacture of the dryer in question, it was feasible to make the optional limit switch standard, as it would have only added a cost of $200 to $250 per door, which represented only about a one percent (1%) increase to the sales price.  Thus, it is arguable that making the limit switch standard on the door was technologically and financially feasible, readily available, and eliminated the danger.

Considering such, this court finds that whether the defendant's design was defective or unreasonably dangerous is an issue of fact for the jury.  Therefore, the defendant's motion for summary judgment in this regard is denied.

### C.  Post-Sale Duty to Retrofit or Warn

As the final ground for its motion, the defendant points out that the plaintiff contends that Gala should have either retrofitted the dryer with a limit switch post-sale, or recommended that NTM, Inc. place a limit switch on the dryer door.  The plaintiff bases this contention on the allegation that Gala was aware of NTM, Inc.'s alleged failure to generally require that its employees follow lock out/tag out procedures.  However, the defendant argues that it did not have a duty to recommend NTM, Inc. place a limit switch on the dryer at issue, nor did they have a duty to retrofit the dryer with the device nine years later when the dryer was acquired by NTM, Inc.

Plaintiff cites the Restatement (Third) of Torts for the proposition that Gala had some form of a post-sale duty to warn the plaintiff.  However, it appears to this court that the plaintiff concedes that South

7

Carolina has not adopted the provisions of the Restatement (Third) of Torts upon which he relies. The plaintiff only notes that South Carolina has demonstrated that it readily follows the Restatement of Torts and because of such, will likely adopt the provisions of the Restatement (Third) upon which he relies, at some undetermined future date. However, the South Carolina legislature has currently only adopted the Restatement (Second) of Torts by statute: S.C. Code Ann. § 15-73-10, et seq. The plaintiff appears to concede that the Restatement (Second) does not contain the provisions which impose liability on the defendant for failing to warn post-sale. As such, this court finds that it would be inappropriate to legislate from the bench and impose a duty on the defendant which plaintiff agrees is not currently recognized under South Carolina law. Plaintiff also cites various cases to support his position the Restatement (Third) of Torts creation of a post- sale duty to warn would be adopted by South Carolina. However, the cases the plaintiff cites pertain to successor liability, <u>Simmons v. Marklift</u>, 622 S.E.2d 213 (2005), and apportionment of liability, <u>Cowden Enterprises, Inc. v. East Coast Millwork Distributors</u>, 611 S.E.2d 259 (2005). Neither deal with a post-sale duty to warn. For the reasons stated above, the court grants summary judgment for Gala on the ground that there is no post-sale duty to retrofit or recommend.

### IV.  Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part.

  **IT IS SO ORDERED.**

         s/ R. Bryan Harwell
         R. Bryan Harwell
         United States District Judge

April 20, 2006
Florence, South Carolina